1  LINDAHL BECK LLP
   KELLEY K. BECK (State Bar No. 089030)
2  kbeck@lindahlbeck.com
   PAUL J. FRAIDENBURGH (State Bar No. 280354)
3  pfraidenburgh@lindahlbeck.com
   660 S. Figueroa Street, Suite 1500
4  Los Angeles, California 90017-3457
   (213) 488-3900
5
   Attorneys for Plaintiffs
6  GOLDEN EAGLE INSURANCE CORPORATION and
   GENERAL INSURANCE COMPANY OF AMERICA
7

8

9              IN THE UNITED STATES DISTRICT COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  GOLDEN EAGLE INSURANCE          )  CASE NO. 12    5438
    CORPORATION and GENERAL         )
14  INSURANCE COMPANY OF AMERICA,   )  COMPLAINT FOR DECLARATORY
                                    )  RELIEF REGARDING:
15            Plaintiffs,           )
                                    )  (1) RESCISSION OF GOLDEN EAGLE'S
16     vs.                          )  EXCESS POLICY; AND
                                    )  (2) APPLICABLE LIMIT FOR
17  MOON MARINE (U.S.A.) CORPORATION,)  SALMONELLA OUTBREAK CLAIMS
    a California Corporation.       )  UNDER GENERAL INSURANCE
18                                  )  COMPANY OF AMERICA'S PRIMARY
              Defendant.            )  POLICY
19  _____)
                                    )
20

21

22         Plaintiffs GOLDEN EAGLE INSURANCE CORPORATION ("Golden Eagle")

23  and GENERAL INSURANCE COMPANY OF AMERICA ("GICA") hereby allege as follows:

                              PARTIES

24         1.    GICA is, and was at all relevant times, a licensed insurer in the State of

25  California. It was originally incorporated in the State of Washington, with its principal place of

26  business at Safeco Plaza, Seattle, Washington. However, in June of 2012 it was reincorporated

27  as a New Hampshire Corporation with the approval of the California Department of Insurance

28                                    -1-

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA 90017-3457
(213) 488-3900

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

1   and its principal place of business is located in Boston, Massachusetts.

2              2.   Golden Eagle was originally incorporated in California in 1997.  But, in

3   2009 it was reincorporated as a New Hampshire Corporation with the approval of the California

4   Department of Insurance and has since had its principal place of business in Boston,

5   Massachusetts.

6              3.   Defendant MOON MARINE (U.S.A.) CORPORATION ("Moon

7   Marine") is a California Corporation incorporated in 2004 and in good standing with a principal

8   place of business in Cupertino, California.  It may be served through its agent for service of

9   process, Chiu Ying Wu, at its principal place of business located at 20370 Town Center Lane

10  #137, Cupertino, Santa Clara County, California 95014.

11                            JURISDICTION AND VENUE

12             4.   Jurisdiction is proper in this Judicial District pursuant to 28 U.S.C. §§

13  1332 and 2202 in that complete diversity exists between the parties and the amount in

14  controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  In addition, an

15  actual case or controversy exists between the parties and a declaratory relief judgment is sought.

16             5.   Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(a)

17  and (c) in that the policies at issue were issued to Moon Marine in this district and it is subject to

18  personal jurisdiction in this judicial district at the time of the commencement of this action.

19                            GEIC'S PRIMARY POLICY

20             6.   Effective 8/15/11 to 8/15/12, GICA issued to Moon Marine a primary

21  Comprehensive General Liability policy of insurance with $1 million occurrence and $2 million

22  aggregate limits, policy No. 24-CC-198847-5.  A true and correct copy of this policy is attached

23  as Exhibit "A" ("the GICA policy").  The GICA policy was issued as a renewal of an expiring

24  GICA policy and was purchased by Moon Marine through its agent, DSG Insurance Services,

25  Inc. ("DSG").  As with its prior expiring primary policy, no request was made to DSG when the

26  primary policy was being renewed to obtain any quote for, or bind, any excess or umbrella

27

28                                      -2-

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

1  coverage through GICA or any other insurer, including Golden Eagle, an affiliated insurer that

2  provided underwriting for the GICA primary policies issued to Moon Marine.

3          7.      The GICA policy provides in pertinent part:

4          **2.    Duties In The Event of Occurrence, Offense, Claim Or Suit.**

5                  a.      You must see to it that we are notified as soon as

6          practicable of an "occurrence" or an offense which may result in a claim.

7                              THE SALMONELLA OUTBREAK

8          8.      Moon Marine is an importer of fish products, including Yellowfin Tuna

9  Nakaochi Scrape ("Scrape"), that is widely distributed through it throughout the United States.

10  Its primary supplier of Scrape in 2012 was Moon Fishery India Pvt. Ltd.

11

12         9.      On March 1, 2012, NY State Department of Health notified U.S. Centers

13  for Disease Control and Prevention (CDC) Outbreak Response Team (ORT) of a cluster of 4 ill

14  persons infected with *Salmonella* Bareilly with the same unusual Pulsed-Field Gel

15  Electrophoresis Pattern.  Most persons infected with *Salmonella* develop diarrhea, fever, and

16  abdominal cramps 12 to 72 hours after infection. The illness usually lasts four to seven days, and

17  most persons recover without treatment. However, in certain cases, the diarrhea may be so

18  severe that the patient needs to be hospitalized. In these patients, the *Salmonella* infection may

19  spread from the intestines to the blood stream, and then to other body sites and can cause death

20  unless these patients are treated promptly with antibiotics.

21         10.     On April 4, 2012, the CDC posted a web announcement that it was

22  collaborating with public health officials in many states throughout the U.S. and the U.S. Food

23  and Drug Administration (FDA), to investigate a multistate outbreak of genetically

24  indistinguishable Salmonella serotype Bareilly infections.  At that time the FDA reported that 93

25  persons had been infected with the outbreak strain of Salmonella Bareilly appearing in 19 states

26  and the District of Columbia.  On April 10, 2012, CDC reported its ORT had been notified by

27  the WI Department of Health Services that 5 recent Salmonella Nchanga infections had occurred

28                                          -3-

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

1  in the same states as the Salmonella Bareilly cases.  By April 11, 2012 the FDA count of

2  reported infected individuals with the outbreak strain of Salmonella Bareilly had risen to 116

3  and had been reported from 20 states and the District of Columbia.

4           11.      On April 13, 2012, the FDA announced it had confirmed from trace back

5  studies of tuna consumed by persons who ate at four cluster-associated restaurants that all of the

6  restaurants served tuna product originating from Moon Fishery India Pvt Ltd, located in Kerala

7  State, India.  The same date, Moon Marine announced it was voluntarily recalling approximately

8  58,000 lbs of Scrape.  The announcement, made in conjunction with the FDA, read in part:

> **For Immediate Release:** April 13, 2012
> **Media Inquiries:** Curtis Allen, 301-796-0393 or 301-500-8888,
> curtis.allen@fda.hhs.gov
> **Consumer Inquiries:** 888-INFO-FDA
>  **Moon Marine USA Corporation voluntarily recalls frozen raw**
> **yellowfin tuna product**
> *"Nakaochi Scrape" associated with a multistate outbreak of Salmonella*
> *Bareilly infections*
> ...
>
> • **What is the Problem?**
>
> Moon Marine USA Corporation (also known as MMI) of Cupertino, Calif.
> Is voluntarily recalling 58,828 pounds of a frozen raw yellowfin tuna
> product, labeled as Nakaochi Scrape AA or AAA. Nakaochi Scrape is tuna
> backmeat, which is specifically scraped off from the bones, and looks like a
> ground product.
>
> The Nakaochi Scrape is associated with an outbreak of 116 cases of
> Salmonella Bareilly in multiple states: Alabama (2), Arkansas (1),
> Connecticut (5), District of Columbia (2), Florida (1), Georgia (5), Illinois
> (10), Louisiana (2), Maryland (11), Massachusetts (8), Mississippi (1),
> Missouri (2), New Jersey (7), New York (24), North Carolina (2),
> Pennsylvania (5), Rhode Island (5), South Carolina (3), Texas (3), Virginia
> (5), and Wisconsin (12).
>
> The raw yellowfin tuna product may have passed through several
> distributors before reaching the restaurant and grocery market, and may not
> be marked with lot information. Distributors and end users should consult
> their suppliers to determine the origin of any Nakaochi Scrape AA or AAA
> in their possession.  ...

-4-

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA 90017-3457
(213) 488-3900

**What is Being Done about the Problem?**
The FDA is working with the Centers for Disease Control and Prevention (CDC) and state and local partners to investigate the outbreak. The FDA is working closely with MMI to identify the implicated product and assist with its removal from the market.

<u>MOON MARINE'S REQUEST FOR EXCESS INSURANCE</u>

12.     Moon Marine shares its Cupertino offices with MMI Food Corporation, a separate legal entity that also imports fish products into the United States. Plaintiffs are informed and believe that Chiu Ying Wu (also known as Iris Wu) is the President and an owner of Moon Marine and Hsiu-Hui Wang (also known as Claire Wang) is the President and an owner of MMI Food Corporation.

13.     Late in the afternoon of April 12, 2012 (hours before Moon Marine's public announcement of its Scrape recall), Hsiu-Hui ("Claire") Wang called DSG, the insurance agent for both Moon Marine and MMI Food Corporation, spoke with Angela Lin at the agency, and requested the agency obtain quotes for umbrella insurance policies to protect better protect both Moon Marine and MMI Food Corporation against liability claims as soon as possible. Claire did not advise DSG that MMI or Moon Marine had any reason to believe Moon Marine's imported Scrape was connected with the Salmonella outbreak, that it had received any contacts from the FDA or CDC about the salmonella outbreak, or that any tuna product recall was being contemplated by Moon Marine.

14.     DSG promptly communicated the request for umbrella quotes by e-mail sent at 5:56 p.m. on April 12, 2012 (after Golden Eagle business hours) to the underwriter at Golden Eagle Insurance through whom the GICA policy for Moon Marine and a similar primary policy for MMI Food Corporation had previously been obtained. The e-mail , a copy of which is included in the e-mail stream  attached as Exhibit B, advised:

- "Insured is interested in seeing a quote for a $3M Umbrella for both policies [sic]. Both companies are under the same owner."

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

- "They'd like to see $5M Umbrella policies – Is this possible?  What's the highest we can go?"
- "They need to see this ASAP bc they'd like an umbrella policy asap."

15.     Golden Eagle's underwriter, Arlington So, responded to the request on Wednesday afternoon, April 18, 2012—five days after Moon Marine and the FDA had announced its Scrape product recall—by providing a "tentative quote" for a $3,000,000 umbrella policy.  The quote was conditioned on his ability to get his manager's approval to offer the coverage.  The same day, DSG called Claire and advised her of the tentative quotes and confirmed she wanted to obtain $3 million umbrella policies for both companies if the underwriter could obtain approval.  Claire did not advise DSG during the conversation or otherwise that the product recall that had been announced five days before and was underway, or that in addition to naming Moon Marine as the importer, MMI had been improperly named by the FDA in its recall announcements.

16.     On Friday, April 20, 2012, DSG and Claire learned the underwriter would not be able to meet with his manager to seek authority to offer and bind a $3 million umbrella policy until the following week.  After then confirming the underwriter had authority without his manager's approval to bind a $2 million Excess Policy with Golden Eagle, DSG requested at the direction of Claire on behalf of Moon Marine he do so.  Copies of the e-mail communications between DSG and Golden Eagle regarding the requests for quotes and binding coverage are also included in the e-mail stream attached as Exhibit "B."

17.     Golden Eagle's underwriter had confirmed before offering to bind coverage for Moon Marine under a $2 million Excess Policy that neither Moon Marine or MMI had an open claims or had reported any losses under their primary policies underwritten by his office, including the GICA policy for Moon Marine.  The underwriter was unaware of any product recall or connection between the salmonella outbreak and Moon Marine's imported Scrape.  Had the product recall been disclosed to him on or before April 20, 2012 when he was asked to quote and bind a $2 Million Excess policy that he had authority to offer without

-6-

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

1   management approval, he would not have offered or agreed to do so given the obvious liability

2   exposure for bodily injury claims from the nationwide salmonella outbreak that had been linked

3   to Moon Marine's importation of Scrape.

4          18.     Because the Scrape recall announced by Moon Marine and the FDA on

5   April 13, 2012 was not disclosed to DSG, GICA or Golden Eagle's underwriter, on or before

6   April 20, 2012, Golden Eagle's underwriter quoted and bound that day a $2 Million Excess

7   Policy with Golden Eagle for a quoted premium of $769. A true and correct copy of this

8   Excess Policy that was thereafter issued effective 4/20/12 to 4/18/12, policy no. CU8909762 is

9   attached as Exhibit "C."

10          19.     Predictably, following the April 13, 2012 announcement of the product

11   recall, a number of lawsuits against Moon Marine for salmonella infections—to some of what is

12   now reported by CDC to be approximately 400 affected persons throughout the country—have

13   been tendered to GICA and Golden Eagle for a defense and indemnity. The first such lawsuit,

14   *Azzolina v. Moon Marine (U.S.A.) Corporation*, Santa Clara County Case No. 112CV222783,

15   was even filed on April 18, 2012, two days before Golden Eagle quoted and bound its Excess

16   Policy on April 20, 2012.

17

18          20.     GICA has assumed the defense of all tendered suits filed against Moon

19   Marine arising from the salmonella outbreak, which are presently pending in three or more

20   states. Additional suits have been threatened to be filed in other states. Plaintiffs are informed

21   and believe the demands asserted collectively in the currently known claims and pending

22   lawsuits exceed any limits available under the GICA primary policy and further claims and suits

23   are reasonably anticipated to exceed the GICA limits by amounts well in excess of the $75,000

24   jurisdictional minimum.

25          **FIRST CLAIM FOR DECLARATORY RELIEF**

26          **(By Golden Eagle Right To Rescind Its Excess Policy)**

27

28                                              -7-

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA 90017-3457
(213) 488-3900

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

21.     Golden Eagle incorporates the allegations in paragraphs 1 though 20 as though set forth in full.

22.     Golden Eagle is informed and believes that Moon Marine was already on notice that its Scrape product was suspected as the source of the nationwide salmonella outbreak and was cooperating in the investigation when it first sought quotes for Umbrella coverage on the afternoon of April 12, 2012.

23.     Moon Marine certainly knew its Scrape had been identified as the likely source of the nationwide salmonella outbreak on April 13, 2012 when it announced its recall in conjunction with the FDA of approximately 58,000 lbs of Scrape based upon its suspected connection with the outbreak.  Despite its knowledge these facts were material to the insurer (and were Moon Marine's motivation for seeking additional liability insurance) it failed to disclose to DSG, GICA or Golden Eagle these known material facts.  And, it knew, or should have known, that had its product recall been disclosed it would have been unable to obtain any umbrella or excess insurance to protect it against claims arising from the outbreak.

24.     Concealment by an insured of material facts in applying for insurance, whether intentional or unintentional, entitles the insurer to rescind the insurance policy *ab initio.* Insurance Code section 331 provides: "Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance."  Concealment is defined in Section 330 as "[n]eglect to communicate that which a party knows, and ought to communicate." Section 332 states more clearly the requirement of materiality: "Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract...." (See also §§ 334, 359, & 360.)

25.     Insurance Code Section 650 provides:  "Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract." Accordingly, based upon Moon Marine's failure to disclose its April 13, 2012 Scrape recall in

-8-

---

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

requesting Golden Eagle quote and bind a $2 million Excess Policy on April 20, 2012, Golden Eagle has advised Moon Marine in writing that it is rescinding its Excess Policy *ab initio*. It has also issued a full refund of the $769 premium paid for the policy.

26.     Golden Eagle is informed and believes that Moon Marine has, or will in the future upon exhaustion of the primary GICA policy, dispute the propriety of the rescission of Golden Eagle's Excess Policy. Accordingly, a declaration of this court is sought to declare the Golden Eagle Excess Policy has been properly rescinded and that Golden Eagle has no obligation to indemnify Moon Marine under the Excess Policy or to defend it upon exhaustion of the primary GICA policy.

27.     Accordingly, there is a justiciable controversy between the parties and a declaration of this court is necessary to determine whether the Golden Eagle Excess Policy has been properly rescinded *ab initio* such that Golden Eagle has no obligation to respond under the Excess Policy to any liability claims made against Moon Marine. Declaratory relief is appropriate because Golden Eagle has no other existing speedy or proper remedy by which to have the parties' rights and obligations determined.

## SECOND CLAIM FOR DECLARATORY RELIEF

### (By GICA That Single Occurrence Limit Applies To Claims)

28.     Golden Eagle incorporates the allegations in paragraphs 1 though 20 as though set forth in full.

29.     A Seafood HACCP (Hazard Analysis and Critical Control Point) inspection was conducted by FDA April 19-24, 2012 at Moon Fishery Pvt Ltd. in Aroor, India. FDA has publicly reported they were informed during its inspection that April 12, 2012 was the last day of tuna processing at the facility due to the seasonal nationwide ban of tuna harvest from the Indian Ocean. Based on the tour of the facility, inspectors identified several seafood HACCP deficiencies such as lack of controls for histamine at receipt of product, lack of controls

-9-

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

LINDAHL, BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA 90017-3457
(213) 488-3900

for *Clostridium botulinum* at storage, and several significant sanitation observations of concern. A copy of the FDA report is attached as Exhibit D.

30.     By April 26, 2012, FDA laboratories had identified *Salmonella* in a sample of scrape collected from Moon Marine with a Pulsed-Field Gel Electrophoresis pattern indistinguishable from the outbreak-associated strain of *Salmonella* Bareilly strain that by then involved 190 cases in 21 states and the District of Columbia. This sample also yielded another type of *Salmonella* with a PFGE pattern indistinguishable from an additional cluster of 10 cases of *Salmonella* Nchanga infections then reported in 5 states associated with this outbreak.

31.     On July 26, 2012, the CDC announced that the salmonella outbreak appeared to be over.  It reports on its website, http://www.cdc.gov/salmonella/bareilly-04-12/index.html, that "[a] total of 425 persons infected with the outbreak strains of *Salmonella* Bareilly (410 persons) or *Salmonella* Nchanga (15 persons) were reported from 28 states and the District of Columbia.

32.     The GICA policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The policy contains a $1,000,000 limit for each occurrence and a $2,000,000 Products-Completed Operations Aggregate Limit that restricts coverage to $2,000,000 regardless of the number of separate occurrences occurring within the policy period. The policy provides in Section III – Limits of Insurance:

> 1.     The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:   …
>
> b.     Claims made or "suits" brought; or
>
> c.     Persons or organizations making claims or bringing "suits".
>
> …
>
> 5.     …the Each Occurrence Limit is the most we will pay for the sum of:
>
> a.     Damages under Coverage A; and
>
> b.     Medical expenses under Coverage C

-10-

COMPLAINT FOR DECLARATION RELIEF RE INSURANCE RESCISSION AND LIMITS

1   because of all "bodily injury" and "property damage" arising out of any
2   one "occurrence".

3         33.     GICA contends that all the damage claims that have been, or may be in
4   the future, asserted by persons as a result of their being infected with the outbreak from Scrape
5   imported by Moon Marine all arise out of a single "occurrence" under its policy effective
6   8/15/11 to 8/15/12 and are subject to a single $1,000,000 per "occurrence" limit as opposed to a
7   $2,000,000 "aggregate" limit applicable when there are multiple "occurrences."

8         34.     California, as the majority of jurisdictions to consider what constitutes a
9   single "occurrence" have adopted the so-called "cause test."  This test looks to the cause or
10  causes of the accident to determine the number of "occurrences" for purposes of a CGL policy's
11  liability limit.  "Occurrence" has generally been held to mean the underlying cause of the injury,
12  rather than the injury or claim itself.  Under the cause test, there is a single occurrence when
13  there was but one proximate, uninterrupted, and continuing cause which resulted in all the
14  injuries and damage.   When all injuries emanate from a common source or process, there is only
15  a single occurrence for purposes of policy coverage.  It is irrelevant that there are multiple
16  injuries or injuries of different magnitudes, or that the injuries extend over a period of time.

17        35.     GICA contends that the claims against Moon Marine resulting from its
18  importation of the infected Scrape from Moon Fishery Pvt. In Aroor, India all arise out of a
19  single "occurrence" and are subject to a single $1,000,000 occurrence limit under its policy, as
20  opposed to a $2 million aggregate limit.

21        36.     GICA is informed and believes that Moon Marine disputes this contention
22  and maintains that the claims arise out of multiple "occurrences" such that the GICA policy's $2
23  million "Products-Completed Operations Aggregate Limit" applies.  Resolution of this dispute
24  is necessary to manage and effectively seek to resolve the claims arising out the salmonella
25  outbreak.  Accordingly, there is an actual, present controversy.  And, declaratory relief resolving
26  this issue is appropriate because the parties have no other existing speedy or proper remedy by
27  which to have the parties' rights and obligations determined.

28

-11-

LINDAHL, BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

1

2        **WHEREFORE**, Plaintiffs prays for judgment as follows:

3       <u>On the First Claim For Declaratory Relief By Golden Eagle:</u>

4          That the Court declare Golden Eagle's policy is, and has been, properly

5 rescinded by the failure to disclose the product recall in applying for the policy and is therefore

6 void *ab initio*;

7       <u>On the Second Claim For Declaratory Relief By GICA:</u>

8     2.      That the Court declare the claims based upon the salmonella outbreak

9 resulting from Moon Marine's importation of contaminated Scrape from Moon Fishery Pvt. In

10 Aroor, India arise out of a single "occurrence" and are all subject to the policy's $1,000,000

11 Single Occurrence Limit'

12         <u>On Both Claims:</u>

13     3.      For costs of suit incurred herein; and

14     4.      For such other and further relief as the Court deems just and proper.

15

16 Dated: October 19, 2012       LINDAHL BECK  LLP

17

18        By

19        KELLEY K. BECK

       Attorneys for Plaintiffs

20        GOLDEN EAGLE INSURANCE CORPORATION and

       GENERAL INSURANCE COMPANY OF AMERICA

21

22

23

24

25

26

27

28

-12-

LINDAHL BECK LLP
660 S. Figueroa Street
Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

# EXHIBIT A



Golden Eagle
Insurance.
Member of Liberty Mutual Group

## GENERAL INSURANCE COMPANY OF AMERICA

### SEATTLE, WASHINGTON
### COMMERCIAL INSURANCE POLICY

| | |
|---|---|
| NAMED INSURED AND MAILING ADDRESS | MOON MARINE USA CORP<br>20370 TOWN CENTER LN STE 137<br>CUPERTINO, CA 95014 |

| RENEWAL DECLARATIONS |
|---|

POLICY NUMBER   24-CC-198847-5

RENEWAL OF   24-CC-198847-4   08-07

SEE NAMED INSURED EXTENSION

| AGENT NAME AND ADDRESS | DSG INS SERVICES INC<br>2707 E VALLEY BLVD STE 303<br>WEST COVINA, CA 91792 |
|---|---|

POLICY PERIOD FROM 08-15-11 TO 08-15-12 12:01 AM STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

0435254        (626) 854-8738

---

THE TOTAL ESTIMATED PREMIUM FOR THE POLICY TERM IS        $1,523.00.
YOU WILL BE BILLED THROUGH YOUR CUSTOMER ACCOUNT #617-2394-752-01.
THIS POLICY IS SUBJECT TO A FINAL AUDIT.

---

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANIES INDICATED ON THE SPECIFIC COVERAGE PART DECLARATIONS AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS RENEWAL SERVES THE SAME PURPOSE AS WRITING A NEW POLICY WITH THE SAME PROVISIONS, CONDITIONS AND INSURING AGREEMENTS. THE INDIVIDUAL COVERAGE PART DECLARATIONS WHICH FOLLOW, LIST ALL OF THE FORMS THAT APPLY TO YOUR RENEWAL AND THOSE, IF ANY, WHICH NO LONGER APPLY. ONLY NEW OR REVISED FORMS ARE ATTACHED TO THIS RENEWAL. YOU MUST ADD THEM TO YOUR PRIOR POLICY.

COMMERCIAL GENERAL LIABILITY COVERAGE PART  ..........  $   1,517.00

                                                            1,517.00
        PREMIUM FOR CERTIFIED ACTS OF TERRORISM  ...........  $       6.00
                        TOTAL POLICY PREMIUM  ............  $   1,523.00

COUNTERSIGNATURE

_____        BY _____        _____
        (DATE)                                        (AUTHORIZED REPRESENTATIVE)

9-CCR (0207)                        COMPANY USE ONLY                        -14- EX.A

NORTHEAST        25 (LARTOT) CB    INSURED COPY        PREPARED 07-01-11


**Golden Eagle**
**Insurance.**
Member of Liberty Mutual Group

**NAMED INSURED EXTENSION**
**GENERAL INSURANCE COMPANY OF AMERICA**
**SEATTLE, WASHINGTON**

PAGE 2

**POLICY NUMBER: 24-CC-198847-5**

The following is a complete list of the named insureds:

MOON MARINE USA CORP

9-CC(0207)

-15- EX.A

ADDLNAMINS089461

Safeco and the Safeco logo are registered trademarks of Safeco Corporation

NORTHEAST        25  (LARTOT)  PREPARED 07-01-11

**GENERAL INSURANCE COMPANY OF AMERICA**

**SEATTLE, WASHINGTON**

PREMISES ADDRESSES                                        PAGE PR      1

NAMED INSURED:   MOON MARINE USA CORP              POLICY NUMBER:    24-CC-198847-5

PREMISES  1
20370 TOWN CENTER LN STE 137
CUPERTINO, CA 95014





-16- EX.A

9-CC(PR) (0207)     NORTHEAST                    (LARTOT)            PREPARED 07-01-11

GENERAL INSURANCE COMPANY OF AMERICA
SEATTLE, WASHINGTON

COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS          PAGE CG    1

NAMED INSURED:  MOON MARINE USA CORP                    POLICY NUMBER:  24-CC-198847-5
FORM OF BUSINESS:  ORGANIZATION OTHER THAN A PARTNERSHIP OR JOINT VENTURE


```
----------------------------------------------------------------------------
                   L I M I T S   O F   I N S U R A N C E
----------------------------------------------------------------------------
COMMERCIAL GENERAL LIABILITY
     GENERAL AGGREGATE LIMIT (OTHER THAN PRODUCTS-COMPLETED OPERATIONS)  $2,000,000
     PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT                       $2,000,000
     PERSONAL AND ADVERTISING INJURY LIMIT                               $1,000,000
     EACH OCCURRENCE LIMIT                                               $1,000,000
     DAMAGE TO PREMISES RENTED TO YOU (ANY ONE PREMISES)                 $1,000,000
     MEDICAL EXPENSE LIMIT (ANY ONE PERSON)                              $   10,000
```

```
----------------------------------------------------------------------------

CODE   CLASSIFICATION-PREMIUM BASIS               EXPOSURE      RATE       PREMIUM
      ----------------------------------------------------------------------------
```

COMMERCIAL GENERAL LIABILITY OTHER THAN PRODUCTS-COMPLETED OPERATIONS


PREMISES   1

56760   MEAT, FISH, POULTRY OR SEAFOOD
        PROCESSING - NOT IN AIRTIGHT CONTAINERS
         GROSS SALES (PER $1,000)              1,545,000      .5170 $      799.00

COMMERCIAL GENERAL LIABILITY PRODUCTS-COMPLETED OPERATIONS


PREMISES  NA

56760   MEAT, FISH, POULTRY OR SEAFOOD
        PROCESSING - NOT IN AIRTIGHT CONTAINERS
         GROSS SALES (PER $1,000)              1,545,000      .4650        718.00

                    *********************

PREMIUM ADJUSTMENTS:

     CERTIFIED ACTS OF TERRORISM                              $         6.00
                                                              -----------------
COMMERCIAL GENERAL LIABILITY TOTAL                            $     1,523.00

                                                                   -17- EX.A

9-CC(GL)(0207)NORTHEAST          (LARTO)          PREPARED   07-01-11 CMD40 SEQ.0001

GENERAL INSURANCE COMPANY OF AMERICA

SEATTLE, WASHINGTON

POLICY FORMS                                                    PAGE PF   1-LAST

NAMED INSURED:  MOON MARINE USA CORP          POLICY NUMBER:  24-CC-198847-5

THE FOLLOWING FORMS APPLY TO THIS POLICY:

COMMERCIAL GENERAL LIABILITY
----------------------------
CG0001(1207) - COMMERCIAL GENERAL LIABILITY COV FORM
CG0068(0509) - RECORDING AND DISTRIBUTION
CG2147(1207) - EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG2170(0108) - CAP ON LOSSES - CERTIFIED ACTS TERRORISM
CG3234(0105) - CALIFORNIA CHANGES
CG7635(0207) - LIABILITY PLUS ENDORSEMENT
CG8613(1001) - EXCLUSION - ASBESTOS
IL0017(1198) - COMMON POLICY CONDITIONS
IL0021(1185) - NUCLEAR ENERGY EXCL. ENDT. (BROAD FORM)
IL0270(1104) - CA CHANGES - CANCELLATION & NONRENEWAL
IL7201(0392) - COMPANY COMMON POL CONDITIONS

THE FOLLOWING FORMS NO LONGER APPLY TO THIS POLICY:



1570

-18- EX.A

9-CC(PF) (0207)    NORTHEAST                    (LARTOT)        PREPARED 07-01-11



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V — Definitions.

## SECTION I — COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

© ISO Properties, Inc., 2006

-19- EX.A

EP

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has

also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statue, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

178

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any

aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III — Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

-23- EX.A

EP

p. **Electronic Data**

Damages arising out of the loss of, loss of use, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III — Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insurance Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III — Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. **Material Published With Knowledge Of Falsity**

      "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. **Material Published Prior To Policy Period**

      "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

   d. **Criminal Acts**

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. **Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

-24- EX.A

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods — Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

o. **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.



p. **Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits laws or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic tests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded Under Coverage A.

## SUPPLEMENTARY PAYMENTS — COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

-26- EX.A

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by the indemnitee and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I — Coverage A — Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorney's fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements, or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II — WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect



to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III — LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

-28- EX.A

**2.** The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage **C**;

   **b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)** Authorize us to obtain records and other information;

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

-29- EX.A

**3. Legal Action Against Us**

No person or organization has a right under this Coverage part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its items have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I — Coverage A — Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

   **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insured**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part fo the first Named Insured, this insurance applies:

   **a.** As if each Named Insured were the only Named Insured; and

   **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V — DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor behicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

   **b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

-31- EX.A

c. All other parts of the world if the injury or damage arises out of:

   (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

   (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

   (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

-32- EX.A

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke,

vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     (a) When all of the work called for in your contract has been completed.

     (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All

such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     (a) You;

     (b) Others trading under your name; or

     (c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

186

-35- EX.A

 **Safeco** Insurance

**COMMERCIAL GENERAL LIABILITY**
**CG 00 68 05 09**

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I — Coverage A — Bodily Injury And Property Damage Liability** is replaced by the following:

  **2. Exclusions**

    This insurance does not apply to:

    **q. Recording And Distribution Of Material Or Information In Violation Of Law**

      "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

      **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

      **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

      **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

      **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I — Coverage B — Personal And Advertising Injury Liability** is replaced by the following:

  **2. Exclusions**

    This insurance does not apply to:

    **p. Recording And Distribution Of Material Or Information In Violation Of Law**

      "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

      **(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

      **(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

      **(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

      **(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2008

-36- EX.A

Safeco and the Safeco logo are registered trademarks of Safeco Corporation

EP

**Safeco** Insurance

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I — **Coverage A — Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., **Exclusions** of Section I — **Coverage B — Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.



187

© ISO Properties, Inc., 2006

-37- EX.A

Safeco and the Safeco logo are registered trademarks of Safeco Corporation
EP

 **Insurance**

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

-38- EX.A

EP

 Insurance

COMMERCIAL GENERAL LIABILITY
CG 32 34 01 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      ELECTRONIC DATA LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCT WITHDRAWAL COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

© ISO Properties, Inc., 2004

-39- EX.A

EP



COMMERCIAL GENERAL LIABILITY
CG 86 13 10 01

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION — ASBESTOS

This endorsement modifies insurance provided under the following:

     COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of or resulting from the manufacturing, handling, selling, distribution, disposal, existence, use of or exposure to asbestos, asbestos dust, asbestos fibers or asbestos products.

We will not have the duty to defend any such claim or "suit."

Safeco and the Safeco logo are registered trademarks of Safeco Corporation

CG 86 13 10 01

EP

 **Insurance**

**COMMERCIAL GENERAL LIABILITY**
**CG 76 35 02 07**

®

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIABILITY PLUS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

**ADDITIONAL INSURED — BY WRITTEN CONTRACT, AGREEMENT OR PERMIT, OR SCHEDULE**

The following paragraph is added to WHO IS AN INSURED (Section II):

4. Any person or organization shown in the Schedule or for whom you are required by written contract, agreement or permit to provide insurance is an insured, subject to the following additional provisions:

   a. The contract, agreement or permit must be in effect during the policy period shown in the Declarations, and must have been executed prior to the "bodily injury", "property damage", or "personal and advertising injury".

   b. The person or organization added as an insured by this endorsement is an insured only to the extent you are held liable due to:

      (1) The ownership, maintenance or use of that part of premises you own, rent,

lease or occupy, subject to the following additional provisions:

   (a) This insurance does not apply to any "occurrence" which takes place after you cease to be a tenant in any premises leased to or rented to you;

   (b) This insurance does not apply to any structural alterations, new construction or demolition operations performed by or on behalf of the person or organization added as an insured;

   (2) Your ongoing operations for that insured, whether the work is performed by you or for you;

   (3) The maintenance, operation or use by you of equipment leased to you by such person or organization, subject to the following additional provisions:

   (a) This insurance does not apply to any "occurrence" which takes place after the equipment lease expires;

Includes Copyrighted Material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services, 2001

-41- EX.A

**(b)** This insurance does not apply to "bodily injury" or "property damage" arising out of the sole negligence of such person or organization;

**(4)** Permits issued by any state or political subdivision with respect to operations performed by you or on your behalf, subject to the following additional provision:

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of operations performed for the state or municipality.

**c.** The insurance with respect to any architect, engineer, or surveyor added as an insured by this endorsement does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

**(1)** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

**(2)** Supervisory, inspection or engineering services.

**d.** This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

A person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

No coverage will be provided if, in the absence of this endorsement, no liability would be imposed by law on you. Coverage shall be limited to the extent of your negligence or fault according to the applicable principles of comparative fault.

## NON-OWNED WATERCRAFT AND NON-OWNED AIRCRAFT LIABILITY

Exclusion **g.** of COVERAGE A (Section I) is replaced by the following:

**g.** "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 52 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**(6)** An aircraft you do not own provided it is not operated by any insured.

## TENANTS' PROPERTY DAMAGE LIABILITY

When a Damage To Premises Rented To You Limit is shown in the Declarations, Exclusion **j.** of Coverage A, Section I is replaced by the following:

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or

any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations, or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III — Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

Paragraph 6. of LIMITS OF INSURANCE (Section III) is replaced by the following:

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

The Damage To Premises Rented To You limit is the higher of the Each Occurrence Limit shown in the Declarations or the amount shown in the Declarations as Damage To Premises Rented To You Limit.

## WHO IS AN INSURED — MANAGERS

The following is added to Paragraph 2.a. of WHO IS AN INSURED (Section II):

Paragraph (1) does not apply to executive officers, or to managers at the supervisory level or above.

## SUPPLEMENTARY PAYMENTS — COVERAGES A AND B — BAIL BONDS — TIME OFF FROM WORK

Paragraph 1.b. of SUPPLEMENTARY PAYMENTS — COVERAGES A AND B is replaced by the following:

b. Up to $3,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

Paragraph 1.d. of SUPPLEMENTARY PAYMENTS — COVERAGES A AND B is replaced by the following:

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

## EMPLOYEES AS INSUREDS — HEALTH CARE SERVICES

Provision 2.a.(1)(d) of WHO IS AN INSURED (Section II) is deleted, unless excluded by separate endorsement.

## EXTENDED COVERAGE FOR NEWLY ACQUIRED ORGANIZATIONS

Provision 3.a. of WHO IS AN INSURED (Section II) is replaced by the following:

a. Coverage under this provision is afforded only until the end of the policy period.

## EXTENDED "PROPERTY DAMAGE"

Exclusion a. of COVERAGE A (Section I) is replaced by the following:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

-43- EX.A

## EXTENDED DEFINITION OF BODILY INJURY

Paragraph **3.** of DEFINITIONS (Section V) is replaced by the following:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

## TRANSFER OF RIGHTS OF RECOVERY

The following is added to Paragraph **8.** Transfer Of Rights Of Recovery Against Others To Us of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

We waive any rights of recovery we may have against any person or organization because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to a person or organization for whom you are required by written contract, agreement or permit to waive these rights of recovery.

## AGGREGATE LIMITS OF INSURANCE — PER LOCATION

For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (Section I), and for all medical expenses caused by accidents under COVERAGE C (Section I), which can be attributed only to operations at a single "location":

Paragraphs **2.a.** and **2.b.** of Limits of Insurance (Section III) apply separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway, or right-of-way of a railroad.

## INCREASED MEDICAL EXPENSE LIMIT

The Medical Expense Limit is amended to $10,000.

## KNOWLEDGE OF OCCURRENCE

The following is added to Paragraph **2.** Duties In The Event Of Occurrence, Offense, Claim Or Suit of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

Knowledge of an "occurrence", claim or "suit" by your agent, servant or employee shall not in itself constitute knowledge of the named insured unless an officer of the named insured has received such notice from the agent, servant or employee.

## UNINTENTIONAL FAILURE TO DISCLOSE ALL HAZARDS

The following is added to Paragraph **6.** Representations of COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

If you unintentionally fail to disclose any hazards existing at the inception date of your policy, we will not deny coverage under this Coverage Form because of such failure. However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

## LIBERALIZATION CLAUSE

The following paragraph is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

10. If a revision to this Coverage Part, which would provide more coverage with no additional premium, becomes effective during the policy period in the state shown in the Declarations, your policy will automatically provide this additional coverage on the effective date of the revision.

 **Insurance**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

Copyright, Insurance Services Office, Inc., 1998

-45- EX.A

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

-46- EX.A

 **Safeco** Insurance

IL 00 21 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY
# EXCLUSION ENDORSEMENT
# (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
    TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

Copyright, Insurance Services Office, Inc., 1983, 1984

-47- EX.A

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

 Insurance

IL 02 70 11 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CALIFORNIA CHANGES — CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the Cancellation Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

© ISO Properties, Inc., 2004

-49- EX.A

Safeco® and the Safeco logo are trademarks of Safeco Corporation
EP

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

(a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

(b) Continuation of the policy coverage would:

(i) Place us in violation of California law or the laws of the state where we are domiciled; or

(ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for

nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

B. The following provision is added to the **Cancellation Common Policy Condition:**

7. **Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part — Farm Property — Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in b. and c. below.

b. We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction (c.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

**(2)** Commercial Property Coverage Part — Causes Of Loss — Special Form; or

**(3)** Farm Coverage Part — Causes Of Loss Form — Farm Property, Paragraph **D.** Covered Causes Of Loss — Special.

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part — Farm Property — Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   **a.** We may elect not to renew such coverage for any reason, except as provided in **b.**, **c.** and **d.** below:

   **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

   However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

   **(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

   **(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

   **(3)** We have:

   **(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

   **(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

   the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   **c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   **d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

   **(1)** Capital Assets Program Coverage Form (Output Policy)

-51- EX.A

**(2)** Commercial Property Coverage Part — Causes Of Loss — Special Form; or

**(3)** Farm Coverage Part   Causes Of Loss Form — Farm Property, Paragraph **D.** Covered Causes Of Loss — Special.

**3.** We are not required to send notice of non-renewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has

agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

-52- EX.A

 Insurance

IL 72 01 03 92

# COMPANY COMMON POLICY CONDITIONS

This policy consists of:

**Common Policy Declarations** which include your name and mailing address, the policy period, premium information and coverage part(s) included.

**Common Policy Conditions.**

Coverage parts consist of one or more of the following:

    Commercial Property
    Commercial Liability
    Commercial Inland Marine
    Commercial Crime/Bonds
    Commercial Automobile
    Businessowners
    Boiler and Machinery
    Workers' Compensation.

    Each of the coverage parts consist of:

        One or more coverage forms
        One or more coverage part conditions
        Applicable endorsements.

If you have any questions, please contact your agent listed on the Common Policy Declarations.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

Paul Condrin
President

Dexter Legg
Vice President and Secretary

-53- EX.A

# EXHIBIT B

DCN: 0120120814321860378830650    Received Date:08/14/2012

# Christa Thai

**From:**          So, Arlington <Arlington.So@GoldenEagleCorp.com>
**Sent:**          Friday, April 20, 2012 11:34 AM
**To:**            Angela Lin
**Subject:**       RE: Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450

**Follow Up Flag:**   Follow up
**Flag Status:**      Completed


Yes its within my authority hahah

Revised premium

MMI – $690
Moon - $773


Arlington

---

**From:** Angela Lin [mailto:angelal@dsginsbroker.com]
**Sent:** Friday, April 20, 2012 11:32 AM
**To:** So, Arlington
**Subject:** RE: Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450
**Importance:** High

Is a $2M within your authority? If it's easier that way I can propose this to the insured...let me know

Should you have any questions, please feel free to contact our office.
*Please note that I have changed my email address to angelal@dsginsbroker.com, effective March 2012.
Please use this new email for all future correspondences. Thank you!

Regards,
Angela Lin

**DSG Insurance Services, Inc.**
**2707 E. Valley Blvd. #303**
**West Covina, CA 91792**
**Tel: (626) 854-8738**
**Fax: (626) 854-8737**
Website: http://www.dsginsbroker.com

---

**From:** So, Arlington [mailto:Arlington.So@GoldenEagleCorp.com]
**Sent:** Friday, April 20, 2012 11:22 AM
**To:** Angela Lin
**Subject:** RE: Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450

That is hard, since my manager is been in meetings.. is the insured willing to with a 2 million umbrella?

---

**From:** Angela Lin [mailto:angelal@dsginsbroker.com]
**Sent:** Friday, April 20, 2012 11:25 AM

1

DCN: 01201208143218603788630650       Received Date:08/14/2012

To: So, Arlington
Subject: FW: Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450
Importance: High

Is it possible to try and get approval today?

Should you have any questions, please feel free to contact our office.
*Please note that I have changed my email address to angela1@dsginsbroker.com, effective March 2012. Please use this new email for all future correspondences. Thank you.

Regards,
Angela Lin

**DSG Insurance Services, Inc.**
**2707 E. Valley Blvd. #303**
**West Covina, CA 91792**
**Tel: (626) 854-8738**
**Fax: (626) 854-8737**
Website: http://www.dsginsbroker.com

---

From: Angela Lin [mailto:angela1@dsginsbroker.com]
Sent: Wednesday, April 18, 2012 2:47 PM
To: 'So, Arlington'
Subject: RE: Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450
Importance: High

Ok, just talked to the insured. please send for approval. Thanks!

Should you have any questions, please feel free to contact our office.
*Please note that I have changed my email address to angela1@dsginsbroker.com, effective March 2012. Please use this new email for all future correspondences. Thank you.

Regards,
Angela Lin

**DSG Insurance Services, Inc.**
**2707 E. Valley Blvd. #303**
**West Covina, CA 91792**
**Tel: (626) 854-8738**
**Fax: (626) 854-8737**
Website: http://www.dsginsbroker.com

---

From: So, Arlington [mailto:Arlington.So@GoldenEagleCorp.com]
Sent: Wednesday, April 18, 2012 1:54 PM
To: Angela Lin
Subject: RE: Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450

Hi Angela,

Here is a tentative quote for a 3 million umbrella I still need to get an approval if we wish to go forward and I can only write an excess not an umbrella.

2

DCN: 01201208143218603788630650     Received Date:08/14/2012

MMI with an effective date of 04/18/2012 to 03/10/2013 the premium is $989
Moon Marine Effective date if 04/18/2012 to 04/18/2012 the premium is $1,107

Arlington

---

**From:** Angela Lin [mailto:angelal@dsginsbroker.com]
**Sent:** Thursday, April 12, 2012 5:56 PM
**To:** So, Arlington
**Subject:** Moon Marine & MMI/ Policy #s 24CC19884750 & 01CH81408450
**Importance:** High

Arlington,

Insured is interested in seeing a quote for a $3M Umbrella for both policies. Both
companies are under the same owner.

They'd also like to see $5M Umbrella policies – is this possible? What's the highest we
can go?

They need to see this ASAP bc they'd like an umbrella policy asap.

Should you have any questions, please feel free to contact our office.
*Please note that I have changed my email address to angelal@dsginsbroker.com, effective
March 2012. Please use this new email for all future correspondences. Thank you.

Regards,
Angela Lin

**DSG Insurance Services, Inc.**
**2707 E. Valley Blvd. #303**
**West Covina, CA 91792**
**Tel: (626) 854-8738**
**Fax: (626) 854-8737**
Website: http://www.dsginsbroker.com

3

# EXHIBIT C



**Golden Eagle Insurance®**
Member of Liberty Mutual Group

Coverage is provided in:

## GOLDEN EAGLE INSURANCE CORPORATION

**This policy has been prepared for:**
MOON MARINE USA CORP
20370 TOWN CENTER LN STE 137
CUPERTINO  CA   95014

**Agent Name and Address:**

DSG INS SERVICES INC
2707 E VALLEY BLVD STE 303
WEST COVINA  CA   91792-3198

Agent Code:   **1000593**

Agent's Phone Number:  (626)-854-8738

Your insurance policy is enclosed. Please place it with your important papers.

Thank you for selecting us to service your insurance needs!

-59- EX.C

**INSURED COPY**



**Golden Eagle Insurance®**
Member of Liberty Mutual Group

**NEW BUSINESS**

EFFECTIVE DATE: 04/20/2012

| Policy Number: CU 8909762 | Prior Policy: |
|---|---|

Billing Type: DIRECT BILL

Coverage Is Provided In   GOLDEN EAGLE INSURANCE CORPORATION

| Named Insured and Mailing Address:<br>MOON MARINE USA CORP<br>20370 TOWN CENTER LN STE 137<br>CUPERTINO  CA   95014 | Agent:<br>DSG INS SERVICES INC<br>2707 E VALLEY BLVD STE 303<br>WEST COVINA  CA   91792-3198 |
|---|---|
| | Agent Code:  1000593      Agent Phone: (626)-854-8738 |

### EXCESS LIABILITY POLICY DECLARATIONS

In return for the payment of premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

POLICY PERIOD: From 04/20/2012    To 04/18/2013    at 12:01 AM Standard Time at your mailing address shown above.

FORM OF BUSINESS:   CORPORATION

LIMITS OF INSURANCE

| Each Occurrence Limit | $  $ 2,000,000 | Any One Occurrence or Offense Subject To The General Aggregate and Products/Completed Operations Aggregate Limits |
|---|---|---|
| Aggregate Limits | $ 2,000,000 | General Aggregate Limit |
| | $ 2,000,000 | Products/Completed Operations Aggregate Limit |
| Self Insured Retention | NIL | Any One Occurrence Or Offense |

UNDERLYING INSURANCE - Refer to Schedule of Underlying Insurance

PREMIUM

| | | | |
|---|---|---|---|
| Terrorism Risk Insurance Act of 2002 Coverage | | $ | 23.00 |
| Total Premium | | $ | 769.00 |

FORMS AND ENDORSEMENTS

Forms and Endorsements made a part of this policy:

| Form Number | | Description |
|---|---|---|
| GEUM101 | - 1101 | COMMERCIAL EXCESS/UMBRELLA POLICY |
| CU2136 | - 0108 | EXCLUSION OF PUNITIVE DAMAGES CERTIFIED ACTS OF TERROR |
| CU2129 | - 0102 | WAR AND TERRORISM ENDORSEMENT |
| 14-347 | - 0410 | WAR LIABILITY EXCLUSION |
| 14-278 | - 0807 | EXCLUSION - PROFESSIONAL LIABILITY |
| 14-254 | - 0504 | CONDITIONAL EXCL OF TERRORISM |
| 14-200CA | - 0108 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| 14-148 | - 0694 | SCHEDULE OF UNDERLYING INSURANCE |

-60- EX.C

14-181 (12/00)

**INSURED COPY**

**EXCE     IABILITY POLICY DECLARATIONS  (cont     ed)**

| GEUM104 | - 0599 | CALIFORNIA CHANGES-CANCELLATION AND NONRENEWAL |
| GEUM207 | - 1102 | EXCEPTION TO TERRORISM - CAP ON LOSSES |
| GEXL003 | - 0700 | COVERAGE B - UMBRELLA LIABILITY DELETED |

Countersigned:

**By**_____          _____

          Authorized Representative                                                Date

THIS DECLARATIONS TOGETHER WITH THE SCHEDULE(S), POLICY FORM AND ENDORSEMENTS (IF ANY) ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

**Date Issued:   05/07/2012**

14-181 (12/00)                                                                           -61- EX.C

**INSURED COPY**

04/20/2012      8909762           YN217181  0705              PGDM060D  J07954      GCAFPPN   00020239  Page      22



**NEW BUSINESS**

Golden Eagle Insurance.
Member of Liberty Mutual Group

**Forming a part of**

| | |
|---|---|
| **Policy Number:  CU  8909762** | |
| **Coverage Is Provided In  GOLDEN EAGLE INSURANCE CORPORATION** | |

| Named Insured:<br>**MOON MARINE USA CORP** | Agent:<br>**DSG INS SERVICES INC**<br><br>**Agent Code:  1000593**   **Agent Phone:** (626)-854-8738 |
|---|---|

## SCHEDULE OF UNDERLYING INSURANCE

| Type of Insurance | Policy Number | Policy Period | Insurer |
|---|---|---|---|
| Businessowners Liability | 24CC19884750 | 04/18/2012 -<br>04/18/2013 | GENERAL INSURANCE CO OF AMERICA |

Limits of Liability:

| | |
|---|---|
| Each Occurrence and Each Person: | $  1,000,000 |
| Aggregate - Products/Completed Operations Hazard: | $  2,000,000 |
| Aggregate - Other Than Products/Completed Operations Hazard: | $  2,000,000 |

Date Issued:  05/07/2012

-63- EX.C

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

## COVERAGE B – UMBRELLA LIABILITY DELETED

Coverage B - Umbrella Liability Coverage is deleted in its entirety and no longer forms a part of this policy.

Coverage A - Excess Liability Coverage remains in full force and effect.

-64- EX.C

INSURED COPY

-65- EX.C

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

Condition 14. Cancellation (Section IV Conditions) is replaced by the following:

14. Cancellation or Non-Renewal

   a.   The first "named insured" shown in the Declarations may cancel this policy by mailing or delivering to us this policy or advance written notice of cancellation.

   b.   If this policy has been in effect for 60 days or less, we may cancel this policy by sending by certified mail, or delivering, to you a written notice at your last mailing address known to us.

       Cancellation will be effective:

       1)  10 days after you receive notice of cancellation if we cancel for nonpayment of premium; or

       2)  60 days after you receive notice of cancellation if we cancel for any other reason.

   c.   If this policy has been in effect for more than 60 days, or if it is a renewal of a policy we issued, we may cancel:

       1)  Only upon the occurrence, after the effective date of the policy, of one or more of the following:

           a)  Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks;

           b)  A judgment by a court or an administrative tribunal that you have violated any California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

           c)  Discovery of fraud or material misrepresentation by:

               i)  You or your representative in obtaining this insurance; or

               ii)  You or your representative in pursuing a claim under this policy.

           d)  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

           e)  Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if the failure materially increases any of the risks insured against;

           f)  A determination by the Commissioner of Insurance that the:

               i)  Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

               ii)  Continuation of the policy coverage would place us in violation of California law or the laws of the state where we are domiciled or threaten our solvency; or

           g)  A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy; or

       2)  Cancellation is based on one or more of the following:

           a)  A material change in limits, type or scope of coverage, or exclusions in one or more of the underlying policies.

-66- EX.C

**GEUM104 (05/99)**

**Page 1 of 2**

      b)    Cancellation or nonrenewal of one or more of the underlying policies where such policies are not replaced without lapse.

      c)    A reduction in financial rating or grade of one or more insurers, insuring one or more underlying policies based on an evaluation obtained from a recognized financial rating organization.

d.      If this policy is cancelled, we will send the first "named insured" any premium refund due.  If we cancel, the refund will be pro rata.  If the first "named insured" cancels, the refund will be less than pro rata.  The cancellation will be effective even if we have not offered a refund.

e.      If we decide not to renew this policy, we will send written notice of nonrenewal, stating the reason(s) for nonrenewal, to the first "named insured" shown in the Declarations at least 60 days, but not more than 120 days before the expiration or anniversary date.  We will send our nonrenewal notice to the first "named insured" at the last mailing address known to us.

f.      We are not required to send notice of nonrenewal in any of the following situations:

    1)    If the transfer or renewal of a policy without any changes in terms conditions or rates, is between us and a member of our insurance group.

    2)    If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph e. above.

    3)    If you have obtained replacement coverage, or if you have agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

    4)    If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it may not be renewed.

    5)    If you request a change in the terms or conditions or risks covered by the policy within 60 days prior to the end of the policy period.

    6)    If we have made a written offer to you in accordance with the time frames shown in paragraph e. above, to renew the policy under changed terms or conditions or at a changed premium rate.

-67- EX.C

# COMMERCIAL UMBRELLA/EXCESS LIABILITY POLICY

This is an occurrence form

## INTRODUCTION

This policy contains two insuring agreements:

**Coverage A.** Excess Liability adds excess limits over scheduled underlying coverages; and

**Coverage B.** Umbrella Liability provides broadening of coverage against some of the gaps in the underlying coverages.

These separate coverages share the Limits of Insurance.

Various provisions in this policy restrict coverage. Please read this entire policy and any underlying insurance carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the "Named Insured" shown in the Declarations. The words "we", "us" and "our" refer to the Company shown in the Declarations providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Words and phrases that appear in quotation marks have special meaning and are defined in Section V - Definitions.

## INSURING AGREEMENT

In consideration of the payment of the required premium and subject to all the terms of this policy, we agree with you as follows:

## SECTION I - COVERAGES

## Coverage A - Excess Liability

We will pay on behalf of the "insured", damages in excess of the total amount payable under the terms of any "underlying insurance" stated in the Declarations. This coverage is subject to the same terms, conditions, agreements, exclusions and definitions as any "underlying insurance" stated in the Declarations except, when they are inconsistent with provisions of this coverage, in which case the provisions of this coverage will apply.

The amount we will pay for damages is limited as described in **Section III - Limits of Insurance**.

We have no obligation under this coverage with respect to any claim or "suit" settled without our consent.

## Coverage B - Umbrella Liability Insurance

We will pay on behalf of the "insured" those sums in excess of the "self insured retention" or the total amount payable by "other insurance" that the "insured" becomes legally obligated to pay as damages for liability imposed on the "insured" by law or assumed under an "insured contract".

This coverage applies only to:

1) "Bodily injury" or "property damage" that

    a)   occurs during the policy period; and

    b)   is caused by an "occurrence"; or

2) "Personal and advertising injury" caused by an "offense" that is committed during the policy period.

The "occurrence" or "offense" must take place in the "coverage territory".

The amount we will pay for damages is limited as described in **Section III - Limits of Insurance**.

Coverage B will not apply to any loss, claim or "suit" for which insurance is afforded under "underlying insurance" or would have been afforded except for the exhaustion of the limits of insurance of "underlying insurance".

We have no obligation under this coverage with respect to any claim or "suit" settled without our consent.

-68- EX.C

04/20/2012        8909762          YN217181  0705        **INSURED COPY**        PGDM060D J07954        GCAFPPN   00020246  Page        29

**EXCLUSIONS**

1.   **Exclusions Applicable to Coverages A & B**

This insurance does not apply to:

a.  **Asbestos**

"Bodily injury", "personal and advertising injury" or "property damage" arising out of:

1)   Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

2)   The use of asbestos in constructing or manufacturing any good or product or structure; or

3)   The removal of asbestos from any good, or product, or structure;

4)   The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos.

This exclusion also includes:

a)   Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b)   Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

This insurance also does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or any expense or claim or "suit" related to any of the above.

b.  **Automobile (First Party)**

Liability imposed on the insured or the insured's insurer, under any of the following laws:

1)   Uninsured Motorist;

2)   Underinsured Motorist;

3)   Automobile No-Fault; or

4)   First party "bodily injury" or "property damage" law, or any similar law.

c.  **Employment Practices**

"Bodily injury" or "personal and advertising injury" to:

1)   a person arising out of any:

a)   Refusal to employ that person

b)   Termination of that person's employment

c)   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or "discrimination" directed at that person; or

2)   the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraph 1) a),b),or c) above is directed by any "insured".

This exclusion applies:

1)   Whether the "insured" may be liable as an employer or in any other capacity; and

2)   To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

d.  **ERISA**

Liability arising out of the Employee Retirement Income Security Act of 1974 or any amendments thereto or any similar State or local laws.

e.  **Motor Carrier Act**

Any obligation for reimbursement to an insurer as provided by the terms of the Motor Carrier Policies of Insurance for Public Liability endorsement under Sections 29 and 30 of the Motor Carrier Act of 1980 or

**INSURED COPY**

under any similar endorsements required by federal or state statute.

**f. Nuclear Energy Liability Exclusion (Broad Form)**

1) Under any Liability Coverage to "bodily injury" or "property damage":

   a) with respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

   b) resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

      ii) the "insured" is or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2) Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operations of a "nuclear facility" by any person or organization.

3) Under any Liability Coverage to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

   a) The "nuclear material"

      i) is at any "nuclear facility" owned by, or operated by or on behalf of an "insured" or

      ii) has been discharged or dispersed therefrom;

   b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   c) The "bodily injury" or "property damage" arises out of furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material:

a) containing "by-product materials" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

a) Any "nuclear reactor";

b) Any equipment or device designed or used for:

   1) separating the isotopes of uranium or plutonium,

   2) processing or utilizing "spent fuel" or

-70- EX.C

INSURED COPY

04/20/2012      8909762      YN217181   0705                    PGDM060D   J07954      GCAFPPN    00020248   Page      31

    3)   handling, processing or packaging "waste".

    c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**g. Pollution - Other Than "Automobile Hazard":**

    1)   "Bodily injury", "property damage", or "personal and  advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal,  seepage, migration, release or escape of "pollutants"  at any time.

    2)   Any loss, cost or expense arising out of any:

        a) Request, demand or order that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

        b) Claim or "suit" by or on behalf of any authority for damages because of testing for, monitoring, cleanup, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants"; or

        c) Payment related to the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for expense or claim or "suit" related to any of the above.

Paragraph 1) of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire":

    a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; except any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste.

    b) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; unless the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

A "hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**h. Pollution - "Automobile Hazard"**

    1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

        a) That are, or that are contained in any property that is:

            i)   Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

            ii)   Otherwise in the course of transit by or on behalf of the "insured" or

            iii)   Being stored, disposed of, treated or processed in or upon the covered "auto";

        b) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

-71- EX.C

c) After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants".

Paragraphs b) and c) above do not apply to accidents that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if the "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

### i.  Lead

This insurance does not apply to:

1)  "Bodily injury", "property damage", or "personal and advertising injury" arising out of, resulting from, or in any way caused or contributed to by the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of lead in any form emanating from any source, or

2)  Any loss, cost or expense arising out of, resulting from or in any way related to any:

   a)  Claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form, or

   b)  Claim or suit by or on behalf of any person, entity, or governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating or detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

We shall not be obligated to investigate, defend, or indemnify any insured or any person or entity claiming any right under the policy for the matters excluded in this endorsement.

### j.  Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### k.  WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion; revolution or acts of terrorism. This exclusion applies only to liability assumed under a contract or agreement.

## 2.  Additional Exclusions Applicable to Coverage B

This insurance does not apply to:

### a.  Insurance Afforded Under Coverage A

Any loss, claim or "suit" for which insurance is afforded under Coverage A of this policy.

### b.  "Personal and Advertising Injury"

1)  Caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

2)  Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

3)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

4)  Arising out of a criminal act committed by or at the direction of any "insured";

5)  For which the "insured" has assumed liability in a contract or agreement.

   This exclusion does not apply to liability for damages that the "insured" would have in the absence

INSURED COPY

of the contract or    eement.

6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

9) Committed by an "insured" whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 16 a., b. and c. of "personal and advertising injury" under the Definitions Section;

10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;

11) Arising out of the rendering or failure to render professional service.  This includes but is not limited to:

   a) Legal, accounting, advertising or architectural services;

   b) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

   c) Supervisory, inspection or engineering services;

   d) Medical, chiropractic, surgical, dental, x-ray or nursing services or treatment, advice or instruction;

   e) Any health service or treatment, advice or instruction;

   f) Any service or treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

   g) Optometry, or optical or hearing aid services including, but not limited to, the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

   h) Ear piercing, body piercing, body painting or tattooing services.

**12) a) To a person arising out of any:**

   i) Refusal to employ that person;

   ii) Termination of that person's employment; or

   iii) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or "discrimination" directed at that person: or

   b) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices  described in paragraphs a) i), ii) and iii) above is directed.

   This exclusion applies:

   i) Whether the insured may be liable as an employer or in any other capacity; and

   ii) To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

13) Arising out of "discrimination" by or at your direction with your knowledge or consent; or

14) Arising out of "discrimination" directly or indirectly related to the sale, rental, lease or sublease or prospective sale, rental, lease or sub-lease of any dwelling, permanent lodging, or premises by or at the direction of any insured; or

15) Fines, penalties, specific performance, or injunctions levied or imposed by a governmental entity, or governmental code, law, or statute because of "discrimination".

-73- EX.C

INSURED COPY

**c. Aircraft, auto, or wat[    ] aft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by, chartered, rented, or loaned to any insured. Use includes operation and "loading or unloading".

**d. Damage to Property**

"Property damage" to:

1) Property you own, rent or occupy;

2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

3) Property loaned to you;

4) Personal property in the care, custody or control of the insured;

5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**e. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**f. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

**g. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured arising out of:

1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**h. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1) "Your product";

2) "Your work"; or

3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**i. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**j. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

1) Causing or contributing to the intoxication of any person;

2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

-74- EX.C

**INSURED COPY**

04/20/2012      8909762      YN217181  0705                PGDM060D J07954      GCAFPPN   00020252  Page      35

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**k.  Employer's Liability**

"Bodily injury" to:

1)  An "employee" of the insured arising out of and in the course of:

   a)  Employment by the insured; or

   b)  Performing duties related to the conduct of the insured's business; or

2)  The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph 1) above.

This exclusion applies:

1)  Whether the insured may be liable as an employer or in any other capacity; and

2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**l.  Professional Services**

"Bodily injury" or "property damage" due to or arising out of the rendering or failure to render any professional service.  This includes but is not limited to:

1)  Legal, accounting, advertising or architectural services;

2)  Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3)  Supervisory, inspection or engineering services;

4)  Medical, chiropractic, surgical, dental, x-ray or nursing services or treatment, advice or instruction;

5)  Any health service or treatment, advice or instruction;

6)  Any service or treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

7)  Optometry or optical or hearing aid services including, but not limited to, the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

8)  Ear piercing, body piercing, body painting or tattooing services

**m.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

1)  That the insured would have in the absence of the contract or agreement; or

2)  Assumed in a contract or agreement that is an "insured contract"; provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses  incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

   a)  Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

   b)  Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**n.  Land or Soil Movement**

This insurance does not apply to any claim for "bodily injury" or "property damage" caused directly or indirectly, based on or attributed to, arising out of, resulting from, or in any manner related to land or soil movement.  Such claim for loss is excluded regardless of any other cause or event contributing concurrently or in any sequence or manner to the loss including, but not limited to, the following causes:

1)  Flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water,

or spray from any     .he foregoing, all whether driven by wind or n.

2) Water which backs up through sewers or drains;

3) Water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows, or any other openings in such sidewalks, driveways, foundations, walls or floors;

4) Leakage, overflow, or excess water from plumbing, heating, air conditioning, irrigation, or other equipment or appliances;

5) Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

6) Faulty, inadequate or defective:

a) Planning, zoning, development, surveying, siting;

b) Design specifications, workmanship, repair, construction, renovations, remodeling, grading, compaction;

c) Materials used in repair, construction, renovation or remodeling; or

d) Maintenance;

of part or all of any property wherever located.

As used herein "land or soil movement" encompasses all earth or soil movement of any kind including, but not limited to, earthquake, landslide, mudflow, erosion, or sinking, rising, settling, cracking, shifting, expansion or contraction of the earth or soil.

The company shall not have any duty to defend such claim, proceeding, or suit based on or attributable to, arising out of, resulting from, or in any manner related to any such claim related to land or soil movement.

## DEFENSE AND SUPPLEMENTARY PAYMENTS - Coverages A & B

1. We will have the right and duty to defend the insured against any "suit" seeking damages payable under this policy:

   a. Under Coverage A when the applicable limit of "underlying insurance" has been exhausted by the payment of judgments or settlements; or

   b. Under Coverage B when damages are sought for "bodily injury", "property damage", "personal and advertising injury" to which neither "underlying insurance" nor "other insurance" applies.

   However, we will have no duty to defend any insured against any "suit" seeking damages for "bodily injury", "property damage", "personal and advertising injury" to which this insurance does not apply.

2. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

3. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. The cost of bonds to release attachments, but only for bond amounts within our limit of insurance. We do not have to furnish these bonds.

   c. The cost of bail bonds required because of the accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $1000 a day because of time off from work.

   e. All costs taxed against the "insured" in the "suit".

   f. "Prejudgment interest" awarded against the "insured" on that part of the judgment we pay. If we make an offer to pay the limit of insurance, we will not pay any "prejudgment interest" based on that period of time after the offer.

-76- EX.C

g. All interest on the full ....ount of any judgment that accrues after ent    f the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable "limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

For Coverages A and B, the following are "insureds"

1. The "named insured" stated in the Declarations.

2. Any person or organization who is designated as an "insured" in the WHO IS AN INSURED section of any policy of "underlying insurance" is an "insured" but only to the extent that they are an "insured" thereunder.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay with respect to Coverage A and Coverage B regardless of the number of:

   a. "Insureds";

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The amount of insurance stated as the General Aggregate Limit is the most we will pay for damages under Coverage A and Coverage B, other than damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard". Each payment we make for such damages reduces, by the amount of the payment, the General Aggregate Limit. This reduced limit will then be the amount of insurance available for further damages subject to the General Aggregate Limit.

3. The amount of insurance stated as the Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A and Coverage B for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

   Each payment we make for such damages reduces by the amount of the payment the Products-Completed Operations Aggregate Limit. This reduced limit will then be the Amount of Insurance available for further damages subject to the Products-Completed Operations Aggregate Limit.

4. Subject to 2. or 3., above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages under Coverage A and Coverage B because of all damages arising out of any one "occurrence".

5. The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV. - CONDITIONS

1. **Appeals**

   In the event the "insured" or any "underlying insurer" elects not to appeal a judgment which exceeds the "Retained Limit", we may elect to do so. We shall be liable, in addition to the Limits of Insurance, for all costs, taxes, expenses incurred and interest on appeals in connection with our right to defend the "insured" under Defense and Supplementary Payments of this policy.

2. **Assignment**

   Assignment of interest under this policy shall not bind us unless or until our consent is endorsed hereon.

3. **Bankruptcy**

   Bankruptcy, insolvency or receivership of the "insured", the "insured's" estate or any "underlying insurer" will not relieve us of our obligations under this policy; but with regard to bankruptcy, insolvency or receivership of any "underlying insurer" this policy shall not apply as a replacement of such bankrupt or insolvent "underlying insurer" and our Limits of Insurance will apply only in excess of the required Limits of Insurance stated in the Declarations of this policy.

4. **Duties in the Event of Occurrence, Claim or Suit**

   a. You must see to it that we are notified promptly of an "occurrence" or "offense" that may result in a claim.

INSURED COPY

Notice should include:

1) How, when and where the "occurrence" or "offense" took place;

2) The names and addresses on any injured persons and witnesses;

3) The nature and location of any injury or damage arising out of the occurrence.

b. If a claim is made or "suit" is brought against any "insured", you must see to it that we receive prompt written notice of the claim or "suit".

c. You and any other involved "insured" must:

1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

2) Authorize us to obtain records and other information;

3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

4) Assist us upon our request, in the enforcement of any right against any person or organization that may be liable to the "insured" because of injury or damage to which this insurance may also apply.

d. No "insured" will, except at that "insured's" own cost, voluntarily make payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

5. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an "insured"; or

b. To sue us under this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured" obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the "insured" and the claimant or the claimant's legal representative.

6. **Maintenance of Underlying Insurance**

You must keep the "underlying insurance" described in the Schedule of Underlying Insurance in full force and effect during the period of this policy, with the same terms, conditions and limits of liability that were in effect when this policy was issued to you, except for reductions in limits of liability of the "underlying insurance" due solely to the payment of claims by an "underlying insurer" for damages as a result of "bodily injury" or "property damage" that occur, or "offenses" that take place during this policy period. Any renewal or replacement of any "underlying insurance" must not be more restrictive in terms or conditions, nor with limits of liability less than the limits of liability of the "underlying insurance" being renewed or replaced.

You must inform us in writing within 30 days of any cancellation of any "underlying insurance" or replacement of any "underlying insurance" by the "underlying insurer" or any other insurer.

Your failure to comply with the foregoing shall not invalidate this policy, but in the event of such failure, we shall be liable under this policy only to the extent that we would have been liable had you complied with these obligations.

You must notify us immediately in writing of any changes to the terms of any "underlying insurance" policies. We may make adjustment of premium charges under this policy from the effective date of such changes to the terms of any "underlying insurance" policies.

7. **Changes**

This policy contains all agreements between you and us concerning the insurance afforded. No change can be made in the terms of this policy except with our consent. The terms of this policy can be amended or waived only by endorsement issued by us and made a part of this policy.

8. **Other Insurance**

If other valid and collectible insurance is available to the "insured" for the damages we cover under this policy, our obligations under this policy are limited as follows:

-78- EX.C

**Excess Insurance**

This policy is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limits of Insurance.

We will pay only our share of the amount of damages, if any, that exceeds the sum of:

1)   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

2)   The total of all deductibles and self-insured amounts under this or any other insurance.

9.   **Premium and Premium Audit**

a.   We will compute all premiums for this policy in accordance with our rules and rates.

b.   Premium shown in this policy is a deposit premium only, when the policy is auditable. At the close of each audit period, we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first "named insured". If the sum of the deposit premium and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first "named insured".

c.   The first "named insured" must keep records of the information we need for premium computation, and send us copies at such times as we may request.

d.   In no event will the premium for this policy be less than

1)   The Premium shown in the Declarations; or

2)   The pro/rata earned Minimum Premium if this policy is cancelled; or

3)   The Policywriting Minimum Premium if one is shown in the Declarations.

10.   **Inspection and Surveys**

We have the right but we are not obligated to:

a.   Make inspections and surveys at anytime;

b.   Give you reports on the conditions we find; and

c.   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of the workers on the public. We do not warrant that conditions:

1)    Are safe or healthful; or

2)    Comply with laws, regulations, codes or standards.

11.   **Representations**

By accepting this policy, you agree:

a.   The statements in the Declarations and any subsequent notice relating to "underlying insurance" are accurate and complete;

b.   Those statements are based upon representations you made to us; and

c.   We have issued this policy in reliance upon your representations.

12.   **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first "named insured", this insurance applies.

a.   As if each "named insured" were the only "named insured"; and

b.   Separately to each "insured" against whom claim is made or "suit" is brought.

13.   **Transfer of Rights of Recovery Against Others to Us**

If the "insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "insured", must do nothing after loss to impair them. At our request, the "insured"

---

**INSURED COPY**

will bring "suit" or transfer  se rights to us and help us enforce them.

Any recoveries shall be applied first to reimburse any interests (including the "insured") that may have paid any amounts in excess of our liability under this policy; then to reimburse us for any payment hereunder; and lastly to reimburse such interests (including the "insured") as to which the policy is excess, as are entitled to the residue, if any.

When we assist in pursuit of the "insured's" right of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recovery.

If there should be no recovery as a result of proceedings instituted solely at our request, we shall bear all expenses of such proceedings.  If there is a recovery as a result of proceedings instituted solely at our request, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

14. **Cancellation or Non-Renewal**

   a. The first "named insured" shown in the Declaration may cancel this policy by mailing or delivering to us this policy or advance written notice of cancellation.

   b. We may cancel or non-renew this policy by mailing or delivering to the first "named insured" written notice at least:

      1) 10 days before the effective date of cancellation, if we cancel for non-payment of premium, as stated on the Declarations; or

      2) 30 days before the effective date of cancellation or non-renewal, if we cancel for any other reason, or non-renew.

   c. We will mail or deliver our notice to the first "named insured's" last mailing address known to us.

   d. Notice of cancellation or non-renewal will state the effective date of cancellation or non-renewal and will be effective for all insureds.  The policy period will end on that date.

   e. If this policy is cancelled, we will send the first "named insured" any premium refund due.  If we cancel, return premium will be pro-rata.  If cancellation is at the request of the first "named insured", return premium will be computed at 90% of pro-rata unless prohibited by law or statute.

   f. If notice is mailed, proof of mailing will be sufficient proof of notice.

15. **Conformity With Statute**

   The terms of this policy and forms attached hereto which conflict with the statute of the state wherein this policy is issued are hereby amended to conform to such statutes.

## SECTION V. - DEFINITIONS FOR COVERAGES A & B

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. **"Auto"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads; including any attached machinery or equipment.  But "auto" does not include "mobile "equipment.

3. **"Automobile hazard"** means liability arising out of the ownership, maintenance, use or entrustment of any "auto".  Use includes "loading or unloading".

4. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person.  Including death  resulting from any of these at any time.

5. **"Coverage territory"** means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit" on the merits in the United States of America (including its territories and possessions), Puerto Rico or Canada; or, in a settlement we agree to.

6. **"Discrimination"** means the unlawful treatment of individuals based solely on pregnancy and marital status, race, color, national origin, age,  sex, sexual orientation, or religion.

7. **"Employee"** includes a "leased worker".  "Employee" does not include a "temporary worker".

8. **"Excess insurance"** means insurance specifically purchased to apply in excess of any other insurance policy's limit of liability.

9. **"Hostile fire"** means a fire, which becomes uncontrollable or breaks out from where it was intended to be.

INSURED COPY

04/20/2012      8909762          YN217181  0705                      PGDM060D  J07954      GCAFPPN    00020258  Page      41

10. **"Impaired property"** means tangible property, other than "your product" \_ your work" that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfil the terms of a contract or agreement;

    if such property can be restored to use by:

        1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

        2) Your fulfilling the terms of the contract or agreement.

11. **"Insured contract"** means:

    a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, explosion or sprinkler leakage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except connection with work for a municipality;

    e. An elevator maintenance agreement; or

    f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

    Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph f. above does not include that part of any contract or agreement:

        1) That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

        2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

            a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders or drawings and  specifications; or

            b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

        3) Under which the "insured", if an architect, engineer or surveyor assumes liability for an injury or damage arising out of the "insured's" rendering or failing to render professional services, including those listed in 2) above and supervisory inspection or engineering activities.

    g. That pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the auto is loaned, leased, or rented with driver; or

    h. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

12. **"Leased worker"** means a person leased to you by a labor-leasing firm under an agreement between you and the labor-leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. **"Loading or unloading"** means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to a place where it is finally delivered;

**INSURED COPY**

but "loading and unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

14. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

1) Power cranes, shovels, loaders, diggers or drills; or

2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

1) Air-compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered "autos";

1) Equipment designed primarily for:

a) Snow removal;

b) Road Maintenance, but not construction or resurfacing;

c) Street cleaning;

2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

3) Air-compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

15. **"Occurrence"** means an accident resulting in "bodily injury" or "property damage", including continuous or repeated exposure to substantially the same general harmful conditions.

16. **"Offense"** means any of the offenses included in the definitions of "personal and advertising injury".

17. **"Other insurance"** means an insurance policy affording coverage that this policy also affords. "Other insurance" includes any type of self-insurance or other mechanism by which an "insured" arranges for funding of legal liabilities.

"Other insurance" does not include:

a. "Underlying insurance"; or

b. Insurance purchased to apply specifically in excess of this policy.

18. **"Personal and advertising injury"** means including consequential "bodily injury", arising out of one or more of the following offenses;

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The actual wrongful eviction from, actual wrongful entry into, or actual invasion of the right of private occupancy of a room, dwelling or premises that a person legally occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.                     -82- EX.C

**INSURED COPY**

    f.  Embarrassment or hu⎯⎯.tion, mental or emotional distress, physical⎯⎯ss, loss of earning capacity or monetary loss, arising out of "discrimination".

    g.  The use of another's advertising idea in your "advertisement"; or

    h.  Infringing upon another's copyright, trade dress or slogan in your advertisement".

**19.** **"Pollutants"** means solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned, reclaimed or disposed of.

**20.** **"Pre-judgment interest"** means interest added to a settlement, verdict, award or judgment based on the amount of time consumed prior to the settlement, verdict, award or judgment.

**21.** **a.** **"Products-completed operations hazard"** includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    1)  Products that are still in your physical possession; or

    2)  Work that has not yet been completed or abandoned.

    b.  "Your work" will be deemed completed at the earliest of the following times:

    1)  When all of the work called for in your contract has been completed.

    2)  When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    3)  When that part of the work done at a job site has been put to its intended use by any person or organization other than a contractor or sub-contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    c.  This hazard does not include "bodily injury" or "property damage" arising out of:

    1)  The transportation of property unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by  you and that condition was created by the "loading or unloading" of  that vehicle by any insured;

    2)  The existence of tools, uninstalled equipment or abandoned or unused materials.

**22.** **"Property damage"** means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**23.** **"Retained limit"** means the greater of:

    a.  The sum of "Underlying Insurance" and "other insurance" applicable to any claim or suit whether such "Underlying Insurance" is collectible or not; or

    b.  The amount of "Self Insured Retention" as shown in the Declarations of this policy.

**24.** **"Self Insured Retention"** means the dollar amount specified in the Declarations.

**25.** **"Suit"** means a civil proceeding in which damages are claimed because of "bodily injury", "property damage", "personal  and advertising injury" to which this insurance applies are  alleged.

"Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

**26.** **"Temporary worker"** means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

**27.** **"Underlying insurance"** means the coverage(s) afforded under insurance policies designated in the Schedule of Underlying Insurance on the Declarations page of this policy.

**INSURED COPY**

28.  **"Underlying insurer"** me⌐ ⌐ any company issuing any policy of "Underly⌐ ⌐nsurance".

29.  **"Your product"** means:

    a.  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        1)   You;

        2)   Others trading under your name; or

        3)   A person or organization whose business or assets you acquired; and

    b.  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and

    b.  The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

30.  **"Your work"** means:

    a.  Work or operations performed by you or on your behalf; and

    b.  Materials, parts or equipment furnished in connection with such work or operations.

**"Your work"** includes:

    a.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work, and

    b.  The providing of or failure to provide warnings or instructions.

-84- EX.C

**INSURED COPY**

04/20/2012        8909762        YN217181  0705                    PGDM060D  J07954      GCAFPPN   00020262  Page    45

-85- EX.C

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCEPTION TO TERRORISM EXCLUSION FOR CERTIFIED ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

### COMMERCIAL UMBRELLA/EXCESS LIABILITY POLICY

**A.** With respect to any exclusion of terrorism in this Policy or attached to this Policy by endorsement, such exclusion does not apply to a "certified act of terrorism".

That exclusion also does not apply to an act which meets the criteria set forth in Paragraph **2.** of the definition of "certified act of terrorism", when such act resulted in aggregate losses of $5 million or less.

**B.** With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

**C.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**1.** The act resulted in aggregate losses in excess of $5 million; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

-86- EX.C

-87- EX.C

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT OF 2002)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs:

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act of 2002, has terminated with respect to the type of insurance provided under this Coverage Part of Policy; or

   b. A renewal, extension or continuation of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

      (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

      (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

      (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

   **The Program is scheduled to terminate at the end of December 31, 2005 unless renewed, extended or otherwise continued by the federal government.**

2. If the provisions of this endorsement become applicable, such provisions:

   a. Supercede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superceded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

-88- EX.C

    **b.** When one or both of the following applies:

        **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy, or

        **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

  **2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage" or "personal and advertising injury" as may be defined in any applicable Coverage Part or Policy.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused by directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

  **1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

  **2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

  **3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

  **4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

  **5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

  **6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **C.5.** or **C.6.** are exceeded.

With respect to this Exclusion, Paragraphs **C.5.** and **C.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

-89- EX.C

**INSURED COPY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – PROFESSIONAL LIABILITY

This endorsement modifies the insurance provided under the following:

**COMMERCIAL UMBRELLA/EXCESS LIABILITY POLICY**

The Additional Exclusion, L. Professional Services, applicable to Coverage B., is added to 1. Exclusions Applicable to Coverages A & B.

-90- EX.C

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**14-278 (08 07)**                                                                                   **Page 1 of 1**

-91- EX.C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A.  Exclusion I. under Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

  2.  Exclusions

   This insurance does not apply to:

   I.  War Or Terrorism

    "Bodily injury" or "property damage" arising, directly or indirectly, out of:

    (1)  War, including undeclared or civil war; or

    (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    (3)  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

    (4)  "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

    regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

    However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

    (1)  The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

    (2)  Fifty or more persons sustain death or serious physical injury.

     For the purposes of this provision, serious physical injury means:

     (a)  Physical injury that involves a substantial risk of death; or

     (b)  Protracted and obvious physical disfigurement; or

     (c)  Protracted loss of or impairment of the function of a bodily member or organ; or

    (3)  The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

    (4)  The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

Copyright, ISO Properties, Inc., 200

**CU 21 29 01 02**                                    -92- EX.C                                    **Pages 1 of 3**

(5) Pathogenic or po... ...ous biological or chemical materials are r... .sed, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B.   The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2.   Exclusions

This insurance does not apply to:

WAR OR TERRORISM

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

(2) Fifty or more persons sustain death or serious physical injury,

For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

-93- EX.C

Copyright, ISO Properties, Inc., 2001

**Pages 2 of 3**

**CU 21 29 01 02**

(3) The "terrorism" in ...ves the use, release or escape of nuclear ...erials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C.  The following definition is added to the Definitions Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1.  That involve the following or preparation for the following:

    a.  Use or threat of force or violence; or

    b.  Commission or threat of a dangerous act; or

    c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.  When one or both of the following applies:

    a.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

-94- EX.C

Copyright, ISO Properties, Inc., 2001

**CU 21 29 01 02**                                                                                **Pages 3 of 3**

INSURED COPY

-95- EX.C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES
## RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

-96- EX.C

© ISO Properties, Inc., 2007

**CU 21 36 01 08**

**Page 1 of 1**

-97- EX.C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA/EXCESS LIABILITY POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

-98- EX.C

2010 Liberty Mutual Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**14-200CA (01/08)**                                                                                                       **Page 1 of 1**

-99- EX.C

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA/EXCESS LIABILITY POLICY

Exclusion 1.k. of the EXCLUSIONS under SECTION I – COVERAGES is replaced by the following:

1. Exclusions Applicable to Coverages A & B

    This insurance does not apply to:

    k. War

    "Bodily injury", "property damage" or "personal and advertising injury", however caused, arising, directly or indirectly, out of:

    1) War, including undeclared or civil war; or

    2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

All other terms and provisions remain the same

-100- EX.C

2010 Liberty Mutual Insurance Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

14-347 (04/10)

Page 1 of 1

-101- EX.C

The term Company, as used below, means the company that has issued the policy to which this witness statement is attached. The Company is identified on your Declarations in the area titled "Coverage is provided in".

**IN WITNESS WHEREOF**, the Company has caused this policy to be executed and attested on its behalf by its President and Secretary at Boston, Massachusetts, and countersigned on the Declarations by a duly authorized representative of that Company. In a state where a countersignature is not required, no policy shall be deemed invalid due to the absence of a countersignature.

_President_                                      _Secretary_

-102- EX.C

# EXHIBIT D

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT OFFICE ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| Center for Food Safety and Applied Nutrition, Office of Compliance, Division of Enforcement, FDA 5100 Paint Branch Parkway, College Park, MD 20740 Phone: (301) 436-2361 Industry Information: www.fda.gov/oc/industry | April 19 - 24, 2012 |
| | **FEI NUMBER** 3006530291 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT IS ISSUED

TO:  Mr. Dominic Sebastian, Managing Director

| FIRM NAME | STREET ADDRESS |
|---|---|
| Moon Fishery (India) Pvt. Ltd | 11/722/D, Chemical Industrial Estate |
| **CITY, STATE AND ZIP CODE** | **TYPE OF ESTABLISHMENT INSPECTED** |
| Aroor, Alleppy 688534 Kerala India | Food Manufacturer |

THIS DOCUMENT LISTS OBSERVATIONS MADE BY THE FDA REPRESENTATIVE(S) DURING THE INSPECTION OF YOUR FACILITY. THEY ARE INSPECTIONAL OBSERVATIONS; AND DO NOT REPRESENT A FINAL AGENCY DETERMINATION REGARDING YOUR COMPLIANCE. IF YOU HAVE AN OBJECTION REGARDING AN OBSERVATION, OR HAVE IMPLEMENTED, OR PLAN TO IMPLEMENT CORRECTIVE ACTION IN RESPONSE TO AN OBSERVATION, YOU MAY DISCUSS THE OBJECTION OR ACTION WITH THE FDA REPRESENTATIVE(S) DURING THE INSPECTION OR SUBMIT THIS INFORMATION TO FDA AT THE ADDRESS ABOVE. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT FDA AT THE PHONE NUMBER AND ADDRESS ABOVE.

DURING AN INSPECTION OF YOUR FIRM (I) (WE) OBSERVED:

## Observation # 1

Your HACCP plan does not list one or more critical control points that are necessary for each of the identified food safety hazards.

Specifically, your HACCP plan for raw tuna does not list critical control points at the following process step to control the hazards of Clostridium Botulinum, histamine and allergens.

A- There is no Critical Control Point listed on your HACCP plan for the processing steps of cutting, scraping, and vacuum packaging performed in your processing room, kept at a temperature of ████████ s C, to control the hazard of pathogen growth and histamine formation.

B- There is no Critical Control Point listed on your HACCP plan for C. botulinum and allergen labeling applied to the primary packaging.

C- There is no Critical Control Point listed on your HACCP plan for metal detection.

D- In your HACCP plan for receiving tuna, the only critical limit listed is temperature, with no critical limit listed for vessel monitoring and histamine testing records to show that tuna was not temperature abused on the harvesting vessel.

| | EMPLOYEE(S) SIGNATURE | EMPLOYEE(S) NAME AND TITLE (Print or Type) | DATE ISSUED |
|---|---|---|---|
| SEE REVERSE OF THIS PAGE | | Dipesh Shah, Investigator Michael Charles, Investigator | 04/24/2012 |

FORM FDA 483 (9/08)   PREVIOUS EDITION OBSOLETE   INSPECTIONAL OBSERVATIONS   Page 1 of 3

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT OFFICE ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| Center for Food Safety and Applied Nutrition, Office of Compliance, Division of Enforcement, FDA<br>5100 Paint Branch Parkway, College Park, MD 20740<br>Phone: (301) 436-2361<br>Industry Information: www.fda.gov/oc/industry | April 19 - 24, 2012 |
| | FEI NUMBER<br>3006530291 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT IS ISSUED

TO: Mr. Dominic Sebastian, Managing Director

| FIRM NAME | STREET ADDRESS |
|---|---|
| Moon Fishery (India) Pvt. Ltd | 11/722/D, Chemical Industrial Estate |
| CITY, STATE AND ZIP CODE | TYPE OF ESTABLISHMENT INSPECTED |
| Aroor, Alleppy 688534 Kerala India | Food Manufacturer |

Observation # 2

You are not monitoring the sanitation conditions and practices with sufficient frequency to assure conformance with Current Good Manufacturing Practices including safety of water that comes into contact with food or food contact surfaces, including water used to manufacture ice, condition and cleanliness of food contact surfaces, maintenance of hand washing, hand sanitizing, and toilet facilities, and protection of food, food packaging material, and food contact surfaces from adulteration.

A- You are not monitoring the safety of water as evidenced by:

1- Tanks used for storage of process waters have apparent visible debris, filth, and microbiological contamination. Sand and activated carbon filter units used in manufacturing of water are not sanitized, and ventilation for tanks is not filtered to protect against contamination. There is no laboratory analysis for water used in ice manufacturing at the (b) (4) facility to show the water used to make ice is potable. Ice manufacturing lacks sanitary controls: ice manufacturing equipment at the Moon Fishery facility is located outside and is susceptible to adulteration from pests and the environment. Apparent bird feces were observed on the ice manufacturing equipment at Moon Fishery; insects and filth were observed in and on the equipment. Ice manufacturing equipment at your (b)(4) facility is rusty and situated so that the ice can not be protected against adulteration, as the ice manufacturing process is constructed into the flooring of the ice facility. Tuna processed at your facility, which is consumed raw or cooked, comes in direct contact with water and ice.

B- You are not monitoring the condition or cleanliness of food contact surfaces as evidenced by:

1-Some of the floor and wall tiles in the tuna processing area are broken and cracked, not allowing for proper cleaning.

2- After cleaning, the ceiling directly above the in-process tuna line was observed to have visible product residue.

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | EMPLOYEE(S) NAME AND TITLE (Print or Type)<br>Dipesh Shah, Investigator<br>Michael Charles, Investigator | DATE ISSUED<br>04/24/2012 |
|---|---|---|---|

FORM FDA 483 (9/08)   PREVIOUS EDITION OBSOLETE          INSPECTIONAL OBSERVATIONS                    Page 2 of 3

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT OFFICE ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| Center for Food Safety and Applied Nutrition, Office of Compliance, Division of Enforcement, FDA 5100 Paint Branch Parkway, College Park, MD 20740 Phone: (301) 436-2361 Industry Information: www.fda.gov/oc/industry | April 19 - 24, 2012 **FEI NUMBER** 3006530291 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT IS ISSUED

TO:  Mr. Dominic Sebastian, Managing Director

| FIRM NAME | STREET ADDRESS |
|---|---|
| Moon Fishery (India) Pvt. Ltd | 11/722/D, Chemical Industrial Estate |
| CITY, STATE AND ZIP CODE | TYPE OF ESTABLISHMENT INSPECTED |
| Aroor, Alleppy 688534 Kerala India | Food Manufacturer |

3- After cleaning, product residues and rust were observed on knives and utensil storage boxes. These knives are used to cut raw tuna.

C- You are not monitoring protection from adulterants as evidenced by:

1-Peeling paint was observed directly above the in-process tuna line.

D- You are not monitoring hand washing, hand sanitizing and toilet facilities as evidenced by:

1-There were no hand drying devices available in the employee rest rooms on the first floor.

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | EMPLOYEE(S) NAME AND TITLE (*Print or Type*) | DATE ISSUED |
|---|---|---|---|
| | | Dipesh Shah, Investigator Michael Charles, Investigator | 04/24/2012 |

FORM FDA 483 (9/08)    PREVIOUS EDITION OBSOLETE         INSPECTIONAL OBSERVATIONS                    Page 3 of 3